Taliaferro, J.
The city of New Orleans claiming from the defendant taxes to the amount of $405, he refuses to pay them on constitutional grounds, alleging that the act of the Legislature, approved March 16, 1870, entitled “An Act to extend the limits of the parish of Orleans,” etc., approved March 16, 1870, being act No. 7 of the extra session of 1870, as well as the act amending the same approved March 13, 1871, upon which the city bases its right to tax his property is, so far as relates to the power and right set up to impose the tax sought to be enforced against him, unconstitutional and void.
First — Because the object and purpose of the Legislature to extend the limits of the city of New Orleans, so as to embrace therein the entire area and territory ot the parish of Orleans, and so as to bring within the limits of said city that portion of said parish in which the property of the respondent is situated, is not expressed in the title of either of the aforesaid acts, as required by article 114 of the State constitution.
Second — Because the said property of respondent is not city property, but is partly vacant land and partly a cultivated farm occupied by respondent for agricultural purposes, and is not required for either streets or houses or other purposes of a town or city, and by the aforesaid legislative act No, 7 of the extra session of 1870, the said property has been brought within the taxing power of the city of New Orleans by an enlargement of its limits, solely for the purpose of increasing its *157 revenues; that legislation of this kind is the taking of private property and the divestiture of vested rights without compensation, and is violative of article 110 of the State constitution and of article 5 of the amendments of the constitution of the United States.
On trial of the case in the lower court there was judgment in favor of the defendant, and the plaintiff appealed.
We think the title to the act No. 7 of the extra session of 1870 is sufficiently expressive of its objects and purposes to indicate the intention of establishing a new city charter, and, as a consequence, the prescribing of the city limits or boundaries.
Under the second branch of the defense the defendant’s counsel reopens the discussion of questions that have given rise to great diversity of opinion, and it must be confessed have also presented to the legislator problems of intricacy and difficulty that he has never yet lucidly and satisfactorily solved. He has had to deal with a species of Glordian knot, for the untying of which we may probably suspect he was compelled to the use of the sword. The condition of humanity, it has been found, is such that while it renders the formation of society, and the living in communities under laws a source of inestimable benefit, yet from this same source from which blessings and advantages flow, come also along with them evils and vexations of the gravest character. The case before us presents an example. The defendant’s property is essentially a rural estate. It is situated several miles distant from the outskirts of the city; part of his lands are of the original forest, uncultivated and yielding no revenue. Cities may properly be extended in their boundaries as need or convenience may require. The extension of their boundaries may, as in the present case, include rural districts, the condition of which are entirely different from the character of city property. Taxation must be equal and uniform. The ascertainment of the proper standard of valuation to form the basis of taxation is well nigh insurmountable. It is at least one that is never clearly and satisfactorily removed. The rural estates brought within the corporate limits of the city, it is argued, are endowed with advantages they did not possess before, and as an equivalent for the city advantages conferred, they should bear their proportion of the expenses that secure those advantages. But the equivalent in such a case is conjectural and never is settled upon by a concurrence of opinion even among those best qualified to determine the question.
But the principle is well settled and the doctrine established, that a legislature may, without the infringement of constitutional rights, extend the boundaries of a city and embrace new territory, but that it is without power to authorize the city to levy any other than a uniform and equal tax on all property alike. In Cooley’s Constitutional Limi *158 tations, p. 504, second edition, it is written that “ Whenever the corporate boundaries are established, it is to be understood that whatever property is included within those limits has thus been included by the Legislature because it justly belongs there, as being within the circuit which is benefited by the local government, and which ought, consequently,to contribute to its burdens. The Legislature can not, therefore, after having already, by including the property within the corporation, declared its opinion that such property should contribute to the local government, immediately turn about and establish a basis of taxation which assumes that it is not in fact urban property at all, but is agricultural lands and should be assessed accordingly.”
The tax in dispute in this case has been imposed since the city charter of 1870, which makes it the duty of the City Council “to lay an equal and uniform tax upon all real and personal property in said city.” Prom these well settled principles, and the law applicable to the case, we conclude that the objections urged against the constitutionality and legality of the tax in question are untenable.
It is therefore ordered that the judgment appealed from be annulled and reversed.
It is further ordered that the plaintiff recover from the defendant the sum of four hundred and five dollars, the amount of tax sued for, with ten per-cent, interest thereon from the thirty-first day of July, 1873, until paid, with all costs of suit.